UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BREWER BODY SHOP, et al.,

    Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

    Defendants.

Case No: 6:14-cv-6002-Orl-31TBS
MDL Case No: 6:14-md-2557-GAP-TBS

## REPORT AND RECOMMENDATION

Pending before me, on referral from the presiding district judge, are Defendants' motions to dismiss (Docs. 9, 17, 19) Plaintiffs' complaint (Doc. 1). Upon due consideration, I respectfully recommend that the motions to dismiss be granted.

### I. Background

Plaintiffs are three Tennessee auto body repair shops and Defendants are 30 insurance companies that write automobile insurance in the state of Tennessee (Id., 1, ¶¶ 1-36). Plaintiffs allege that Defendants conspired to fix prices and boycott Plaintiffs in violation of § 1 of the Sherman Act, 15 U.S.C. § 1 (Id., ¶¶ 125-141). They also make claims for damages based upon quantum meruit, quasi-estoppel, statutory unfair trade practices, tortious interference with business relationships, and conversion (Id., ¶¶ 101-124). Plaintiffs' allegations are similar to the allegations made by the plaintiffs in A&E Auto Body, Inc. v. 21st Century Centennial Insurance Co., No. 6:14-cv-00310-Orl-31TBS, which the Court summarized in its Order granting the motions to dismiss in that case:

> The Defendants in this case are alleged to "exert control" over the Plaintiffs' businesses (and the hourly rates paid by the Defendants) in a number of ways, beginning with agreements

generally referred to as "direct repair programs" or "DRPs". To participate in a particular insurer's DRP, a repair shop typically agrees to certain concessions in regard to such things as the prices it will charge and the priority given to vehicles owned by people who have insurance through that insurer. In exchange, the repair shop is listed as a "preferred provider". However, the Plaintiffs complain that the prices that they were permitted to charge under the DRPs were unfairly manipulated, that even repair shops that were not participating in DRPs were restricted to those price ceilings, and that repair shops that complained about these practices or tried to charge higher prices faced intimidation and boycotts from the insurers.

As a general proposition, each DRP contains language obligating the repair shop to charge the insurance company no more than the "market rate" for repairs in the general area. State Farm Mutual Automobile Insurance Company ("State Farm"), a Defendant in this case, determines this market rate. State Farm surveys the repair shops in a given area, determines the hourly rate charged by each repair technician, and then designates a rate just above the midpoint of all rates charged to be the "market rate." However, the Plaintiffs complain that State Farm alters the survey results to achieve a "wholly artificial 'market rate'" and uses this artificially lowered result to negotiate price decreases from repair shops. If a repair shop attempts to raise its hourly rate, State Farm will, among other things, remove it or threaten to remove it from the DRP.

The other Defendants, who do not perform such surveys, "specifically advised the Plaintiffs that they will pay no more than State Farm pays for labor." The Defendants refuse to pay a higher labor rate even to Plaintiffs who are not participating in a DRP.

The Plaintiffs also allege that the Defendants improperly lowered the amounts that they paid for repairs by, among other things, refusing to pay for replacement parts even where the repair shop thought replacement was a better option than repair and by requiring utilization of used parts even where new parts were available. The Plaintiffs also complain that the Defendants (1) are refusing to abide by the estimates set forth in the industry's leading collision-repair-estimating databases; (2) that they are refusing to pay for certain required materials and practices on the grounds that those items are included in the price of the repair; and (3) that they

> have imposed arbitrary caps on the amount they are willing to
> pay for paint as part of a repair.

2015 WL 304048, at *1-2 (M.D. Fla. Jan. 21, 2015).

Plaintiffs filed this lawsuit in the United States District Court for the Western District of Tennessee (Doc. 1). Three separate groups of Defendants have filed motions to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Docs. 9, 17, 19; see also Doc. 69). Plaintiffs have responded to the motions and each group of Defendants has filed a reply (Docs. 24, 28, 30, 32, 68 and 73).

On August 12, 2014, the United States Judicial Panel on Multidistrict Litigation transferred the case to this district for coordinated or consolidated pretrial proceedings before District Judge Gregory A. Presnell. In re Auto Body Shop Antitrust Litigation, __ F. Supp. 3d. __, 2014 WL 3908000 (J.P.M.L. Aug. 8, 2014). On November 14, 2014, the Court held a hearing on the motions to dismiss in this and six related cases (Case No. 6:14-cv-310, Doc. 282). The Court entered its Order dismissing the amended complaint in the Florida case on January 21, 2015. A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co., No. 6:14-cv-00310-Orl-31TBS, 2015 WL 304048 (M.D. Fla. Jan. 21, 2015). On February 27, Judge Presnell referred the pending motions to dismiss in this case to me for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, Conley v. Gibson, 355 U.S. 41,

- 3 -

47 (1957), overruled on other grounds, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case.  Milbum v. United States, 734 F.2d 762, 765 (11th Cir.1984).  In ruling on a motion to dismiss, the court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir.1988).  The court must also limit its consideration to the pleadings and any exhibits attached to the pleadings.  FED.R.CIV.P. 10(c); see also GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993).

A plaintiff must provide enough factual allegations to raise its right to relief above the speculative level, Twombly, 550 U.S. at 555, and to indicate the presence of the required elements, Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir.2007).  Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal.  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir.2003).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. 678 (internal citations and quotations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the plaintiff is entitled to relief.'"  Id. at 679 (quoting FED.R.CIV.P. 8(a) (2)).

### III. Discussion

<u>Count I: Quantum Meruit/Unjust Enrichment</u>

The Tennessee Supreme Court has described quantum meruit as "an equitable substitute for a contract claim" that allows a party to "recover the reasonable value of goods and services provided to another." <u>Swafford v. Harris</u>, 967 S.W.2d 319, 324 (Tenn. 1998). The elements of a claims for quantum meruit are:

> 1. There is no existing, enforceable contract between the parties covering the same subject matter;
>
> 2. The party seeking recovery proves that it provided valuable goods or services;
>
> 3. The party to be charged received the goods or services;
>
> 4. The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and
>
> 5. The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

<u>Id.</u>

The existence of a valid contract governing the parties' relations precludes any quantum meruit or unjust enrichment claim under Tennessee law. <u>General Agents Ins. Co. of America, Inc. v. Mandrill Corp., Inc.</u>, 243 Fed. Appx. 961, 969 (6th Cir. 2007) ("As the district court noted, quantum meruit is a remedy available in Tennessee when there is no existing, enforceable contract governing payment for the services rendered. Since the CGL Policy is an existing, enforceable contract governing such payment, quantum meruit is unavailable."). In this respect, the law of Tennessee is like the law in Indiana, Mississippi, and Florida. See <u>Indiana Autobody Association, Inc. v. State Farm Mutual</u>

Automobile Ins. Co., No. 6:14-cv-6001, Doc. 145 at 5-7 (M.D. Fla. Feb. 25, 2015) (report and recommendation on motions to dismiss) (Indiana); Capitol Body Shop, Inc. v. State Farm Mutual Automobile Ins. Co., No. 6:14-cv-6000, Doc. 82 at 8 (M.D. Fla. Feb. 9, 2015) (report and recommendation on motions to dismiss) (Mississippi), report and recommendation adopted, Doc. 83 (Feb. 27, 2015); see also Cross v. Strader Construction Corp., 768 So.2d 465, 466 (Fla. 2d DCA 2000) (under Florida law, "[q]uantum meruit damages cannot be awarded when an enforceable contract exists").

In the Mississippi and Indiana cases, I concluded that the allegations in those complaints that "Defendants" entered into DRPs "with ... individual Plaintiffs" defeated the quantum meruit claims because they amounted to allegations that the plaintiffs had entered into contracts with the defendants. Indiana Autobody Association, Doc. 145 at 6-7; Capitol Body Shop, Doc. 82 at 8-9. Here too, Plaintiffs have alleged that they entered into DRPs with "Defendants," which means all of the Defendants (Doc. 1, ¶ 40).[1] Accordingly, I recommend the Court dismiss Count I without prejudice because Plaintiffs' allegations that they have DRPs with all of the Defendants precludes any quantum meruit claim. Because I find dismissal is warranted on this basis, I do not address the parties' other arguments.

Count II: Quasi-Estoppel

Plaintiffs attempt to assert a claim for "quasi-estoppel," which Defendants insist is not a cause of action under Tennessee law (See, e.g., Doc. 9-1 at 14). In response, Plaintiffs argue that the Sixth Circuit recognized the doctrine of quasi-estoppel in Pace Industry Union Management Fund v. Dannex Manufacturing Co., 394 Fed. Appx. 188

---

[1] Plaintiffs make clear in their responses to Defendants' motions that when they use the term "Defendants" in their complaint, they mean all of the Defendants (Doc. 24 at 3, Doc. 28 at 3; Doc. 30 at 3). Cf. Indiana Autobody Association, Doc. 145 at 7.

(2010) (See, e.g., Doc. 24 at 15-16). Nothing in Pace supports Plaintiffs' contention that quasi estoppel is a cause of action. In Pace, the plaintiffs brought suit to recover delinquent contributions to an employee pension fund under the Employee Retirement Income Security Act and Labor Management Relations Act. First, the court applied New Jersey law, not Tennessee law, when it approved the use of quasi-estoppel to prevent the defendant from raising a defense. Second, the court was not asked to find, and did not find, that quasi-estoppel is a cause of action.

The Court has already dismissed quasi-estoppel claims under Florida and Mississippi law. A&E Auto Body, 2015 WL 304048, at *6-7; Capitol Body Shop, Doc. 82 at 10-11; Doc. 83. Plaintiffs have not provided any law or argument to suggest that the reasoning in the Florida and Mississippi cases is not equally applicable here. Now, I find that quasi-estoppel is not a cause of action under Tennessee law, and recommend that Count II be dismissed with prejudice.

Count III: Violation of Tenn. Code § 47-18-104(b)(8)

The Tennessee Consumer Protection Act of 1977 ("TCPA") makes unlawful certain "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." TENN. CODE § 47-18-104(a). Included among the acts and practices deemed unfair by the statute is "[d]isparaging the goods, services, or business of another by false or misleading representations of fact." Id. § 47-18-104(b)(8). Plaintiffs allege that Defendants violated this provision by making "implications of poor quality work, poor quality efficiency, poor business ethics and practices, and unreliability" about Plaintiffs (Doc. 1, ¶ 113).

Defendants argue that this claim is barred by a section of the Tennessee Insurance Code which states that "title 50 and [title 56] shall provide the sole and

exclusive statutory remedies and sanctions applicable to an insurer, person, or entity licensed, permitted, or authorized to do business under this title for alleged breach of, or alleged unfair or deceptive acts or practices in connection with, a contract of insurance as such term is defined in § 56-7-101(a)." TENN. CODE § 56-8-113. Whether Plaintiffs' TCPA claim is barred by this section turns on whether the "unfair or deceptive acts or practices" alleged in the complaint were committed "in connection with[] a contract of insurance." Plaintiffs argue that they were not, because there is no insurer-insured relationship between Plaintiffs and Defendants (See Doc. 24 at 16). Defendants maintain that the "acts" and "practices" complained of are covered by § 56-8-113 because they occurred in connection with Defendants' contracts with their insureds (See Doc. 19-1 at 5; Doc. 32 at 9).

According to the Tennessee Supreme Court "well defined precepts" apply to the interpretation of Tennessee statutes. Estate of French v. Stratford House, 333 S.W.3d 546, 554 (Tenn. 2011) (citing Colonial Pipeline v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008)).

> Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn.2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. In re C.K.G., 173 S.W.3d 714, 722 (Tenn.2005). When a statute is clear, we apply the plain meaning without complicating the task. Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn.2004). Our obligation is simply to enforce the written language. Abels ex rel. Hunt v. Genie Indus., Inc., 202 S.W.3d 99, 102 (Tenn.2006). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. Colonial Pipeline, 263 S.W.3d at 836. Courts must presume that a legislative body was aware of its prior

> enactments and knew the state of the law at the time it passed the legislation. Owens v. State, 908 S.W.2d 923, 926 (Tenn.1995).

Id.

The parties offer little in the way of argument or analysis concerning the proper interpretation of § 56-8-113. I only located one case that addresses the issue of whether § 56-8-113 precludes a claim by a business that is not a party to an insurance contract against an insurer alleging that the insurer disparaged the business to an insured or claimant. In Price's Collision Center, LLC v. Progressive Hawaii Ins. Co., Nos. 3:12-00873, 3:12-00874, 2013 WL 5782926 (M.D. Tenn. Oct. 28, 2013), the federal district court concluded that a TCPA claim brought by a body shop against an auto insurer claim was barred. Id. at *3. I agree with the decision in Price's Collision Center. The allegedly disparaging statements were made between the parties to the insurance contracts, concerned matters within the scope of the insurance contracts (i.e., vehicle repairs), and would not have been made but for the insurance contracts. Therefore, I find that giving the statutory language its plain meaning, the "unfair or deceptive acts or practices" Plaintiffs complain about were made "in connection with[] a contract of insurance."

My only reservation is that the section of the Tennessee Insurance Code addressing unfair trade practices, TENN. CODE § 56-8-104, defines unfair trade practices to include making statements "with respect to the business of insurance, or with respect to any insurer in the conduct of its insurance business, that is untrue, deceptive, or misleading," as well as statements that are "false, or maliciously critical of or derogatory to the financial condition of any insurer, and that is calculated to injure the insurer." TENN. CODE § 56-8-104(3), (4). Reading § 56-8-104 together with § 56-8-113 suggests

- 9 -

that insurers may disparage anyone they want (except another insurer) without committing an "unfair or deceptive" practice, so long as such disparagement is "in connection with" a contract of insurance. When directed at an insurer, however, such disparagement is an "unfair trade practice" under the Insurance Code. This asymmetry could suggest that the Tennessee legislature intended for § 56-8-113 to be read narrowly. This concern is diminished, however, by the fact that § 56-8-113 does not "eliminate or otherwise affect any ... remedy, cause of action, right to relief, or sanction available under common law."

Because I conclude that § 56-8-113 bars Plaintiff's TCPA claim, I recommend this count be dismissed with prejudice. Alternatively, I recommend dismissal without prejudice for the same reason I recommend dismissal of Plaintiff's tortious interference claim, which is based on substantially the same conduct as the TCPA claim. See infra pp. 10-12.

Count IV: Tortious Interference with Business Relations

To state a claim for tortious interference with business relations, a plaintiff must plausibly plead:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and ... (5) damages resulting from the tortious interference.

Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002).

Plaintiffs complaint identifies a specific class of third persons–"insureds and[] claimants who called Defendants and identified Plaintiffs as their choice of repair facility"

(Doc. 1, ¶ 118)–with whom Plaintiffs had prospective business relationship that Defendants knew about. The complaint also alleges that Defendants took actions–including making misrepresentations about the quality and integrity of Plaintiffs' businesses–that could certainly prevent the formation of these relationships or terminate any relationship already in existence. (See Id., ¶¶ 91-95, 113-14, 117). From these allegations, it is plausible to infer that is exactly what Defendants intended. Cf. Truslow v. State, 31 S.W. 987 (Tenn. 1985) ("The law presumes a man intends what he does, and the usual and natural consequences of his acts.").

Defendants argue that Plaintiff has not shown an improper motive (see, e.g., Doc. 17-1 at 18; Doc. 19-1 at 9-10), but a defendant's motive is irrelevant if the means used are improper. Common sense suggests that making misrepresentations about the quality and integrity of another's businesses is improper, and Defendants do not argue to the contrary. Finally, Plaintiffs allege that Defendants' actions caused them injury, presumably in the form of lost business from prospective customers to whom Defendants made the alleged misrepresentations (Doc. 1, ¶ 120).

But, Plaintiffs' complaint suffers from a different problem. As with the unjust enrichment claim, the generalized assertion that Defendants enter into DRPs with Plaintiffs renders the tortious interference claim implausible. As I discussed in my report and recommendation in Capitol Auto Body,

> If Plaintiffs are to be believed, each and every Defendant "steered and attempted to steer" customers away from each and every Plaintiff. (Doc. 3, ¶ 130). This is implausible in light of the allegation that (at least some) Plaintiffs had DRP agreements with (at least some) Defendants, and were therefore "preferred" shops. (Doc. 3, ¶¶ 49-50; see also id., ¶ 99-100 (alleging that Defendants steered insureds and claimants to preferred or favored shops and away from "noncompliant" shops.")).

> The amended complaint alleges that all Defendants committed the same violations of law against all Plaintiffs. The result is a complaint that alleges that every Defendant tortuously interfered in the business of every Plaintiff.

Capitol Auto Body, Doc. 82 at 13.

The Court's order in the Florida case explained that this is not an acceptable manner of pleading. Id. at 13-14 (quoting A & E Auto Body, No. 6:14-cv-310, Doc. 110 (M.D. Fla. June 11, 2014) (order dismissing original complaint)). Here, as in the Mississippi case, I recommend that the Court dismiss this count without prejudice, with instructions that Plaintiff identify specifically which Defendants interfered with which Plaintiffs. See id. at 14.

### Count V: Conversion

"Conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights." PNC Multifamily Capital Institutional Fund XXVI Ltd. Partnership v. Bluff City Community Development Corp., 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) (citing Barger v. Webb, 764 S.W.2d 207, 211 (Tenn. 1965); Lance Products, Inc. v. Commerce Union Bank, 764 S.W.2d 207, 211 (Tenn. Ct. App. 1988)). The elements of a conversion claim are: "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." Id. (citing Kinnard v. Shoney's, Inc., 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000); Mammoth Cave Production Credit Ass'n v. Oldham, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)). The Tennessee Court of Appeals has identified three ways in which conversion may occur:

> First, a person may personally dispossess another of tangible personalty. Restatement (Second) of Torts § 223(a) (1965). Second, a person may dispossess another of tangible property through the active use of an agent. See, e.g.,

> McCall v. Owens, 820 S.W.2d 748, 751 (Tenn.Ct.App.1991).
> Third, under certain circumstances, a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for "receiving a chattel." Restatement (Second) of Torts § 223(d).

PNC Multifamily, 387 S.W.3d at 553.

Claims for the conversion of money are viable only when the money in question "'is specific and capable of identification or where there is a determinate sum that the defendant was entrusted to apply to a specific purpose.'" Id. (quoting 90 C.J.S. Trover and Conversion § 16 (2012)). Plaintiffs have not identified the "monies" that allegedly "belong[ed]" to them upon repairing the vehicles of Defendants' insureds or claimants (Doc. 1, ¶ 124), nor have they shown that those "monies" are capable of identification. And, the complaint does not allege that any funds were "entrusted" to Defendants to "apply to a specific purpose." While it is true that insureds pay premiums to Defendants there are no allegations that those premiums go anywhere but into the insurer's general funds. There are also no allegations that those premiums are designated for any specific purpose.

In short, even if Defendants owed Plaintiffs money, Plaintiffs have not pled facts that would support a conclusion that Plaintiffs had a property interest in any funds in Defendants' possession. Accordingly, I recommend that Count V be dismissed without prejudice. See A&E Auto Body, 2015 WL 304048, at *9 (dismissing conversion claims without prejudice); Capitol Body Shop, Doc. 82 at 15 (recommending dismissal of conversion claims without prejudice).

### Counts VI and VII: Federal Antitrust Claims

Plaintiffs' antitrust claims are indistinguishable from the claims asserted by the plaintiffs in A&E Auto Body, Inc. On January 21, 2015, the Court dismissed those claims

without prejudice, with leave to amend. A&E Auto Body, 2015 WL 304048, at *9-12 (M.D. Fla. Jan. 21, 2015). The Court's reasoning in A&E Auto Body applies to Plaintiffs' amended complaint. Accordingly, I recommend that Counts VII and VIII be dismissed without prejudice, for the reasons stated in the dismissal order in A&E Auto Body.

### IV. Recommendation

Upon consideration of the foregoing, I respectfully recommend that Defendants' Motions to Dismiss be **GRANTED** and that Plaintiffs' First Amended Complaint be **DISMISSED** with 21 days leave to amend.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on March 2, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record