UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BREWER BODY SHOP, LLC, AAA
COLLISION CENTER, LLC, ICON
COLLISION SERVICES, LLC and AAA
COLLISION OAKLAND, INC.,

     Plaintiffs,

v.                                   Case No:   6:14-cv-6002-Orl-31TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, STATE FARM
FIRE AND CASUALTY COMPANY,
TENNESSEE FARMERS MUTUAL
INSURANCE COMPANY,
PROGRESSIVE HAWAII INSURANCE
CORPORATION, ALLSTATE
PROPERTY AND CASUALTY
INSURANCE COMPANY, ALLSTATE
INSURANCE COMPANY, ALLSTATE
INDEMNITY COMPANY, NATIONWIDE
PROPERTY AND CASUALTY
INSURANCE COMPANY, NATIONWIDE
MUTUAL INSURANCE COMPANY,
GEICO GENERAL INSURANCE
COMPANY, GEICO INDEMNITY
COMPANY, UNITED SERVICES
AUTOMOBILE ASSOCIATION, USAA
CASUALTY INSURANCE COMPANY,
SAFECO INSURANCE COMPANY OF
ILLINOIS, SHELTER MUTUAL
INSURANCE COMPANY, SHELTER
GENERAL INSURANCE COMPANY,
DIRECT GENERAL INSURANCE
COMPANY, LIBERTY MUTUAL FIRE
INSURANCE COMPANY, TRAVELERS
PROPERTY CASUALTY INSURANCE
COMPANY, TRAVELERS INDEMNITY
COMPANY, TRAVELERS CASUALTY
COMPANY OF CONNECTICUT,
TRAVELERS INDEMNITY COMPANY
OF AMERICA, HARTFORD FIRE
INSURANCE COMPANY, HARTFORD
CASUALTY INSURANCE COMPANY,

HARTFORD PROPERTY AND
CASUALTY INSURANCE COMPANY,
HARTFORD INSURANCE COMPANY
OF THE MIDWEST, AUTO-OWNERS
INSURANCE COMPANY, STATE AUTO
PROPERTY AND CASUALTY
INSURANCE COMPANY, STATE
AUTOMOBILE MUTUAL INSURANCE
COMPANY, FIRST ACCEPTANCE
INSURANCE COMPANY OF
TENNESSEE, INC. and PENNSYLVANIA
NATIONAL MUTUAL CASUALTY
INSURANCE COMPANY,

      Defendants.

_____

## REPORT AND RECOMMENDATION

This case comes before me on referral from the district judge, for report and

recommendation on the questions of state law raised in the following motion papers:

- Moving Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 86);

- Certain Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 87);

- Geico General Insurance Company and Geico Indemnity Company's Motion and Supporting Memorandum to Dismiss Plaintiffs' First Amended Complaint (Doc. 88);

- Omnibus Response to Certain Defendants' Motions to Dismiss (Doc. 92);

- Moving Defendants' Reply Brief in Further Support of Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 95);

- Certain Defendants' Reply in Support of Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 96); and

- Geico General Insurance Company and Geico Indemnity Company's Reply in Support of Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 97).

After due consideration, I respectfully recommend that the motions be **GRANTED in part** and **DENIED in part**.

## I. Background

The Court is familiar with the background of this case.   Plaintiffs are a group of Tennessee auto body repair shops and Defendants are insurance companies that write automobile insurance in the state of Tennessee.   Plaintiffs allege that over a course of years, they have provided motor vehicle collision repair services to Defendants' policyholders and claimants (Doc. 85, ¶ 41).   Plaintiffs complain that "Defendants have engaged in an ongoing, concerted and combined intentional course of action and conduct to improperly and illegally control and depress automobile damage repair costs to the detriment of the Plaintiffs and the substantial profit of the Defendants."   (Id. at ¶ 43).   Plaintiffs maintain that

> Defendants have intentionally combined to utilize their aggregated market power to exert control over every aspect of the collision repair industry, including but not limited to price fixing of labor rates, price fixing of replacement parts, compulsory use of substandard or dangerous replacement parts, compulsory use of a parts procurement program which directly financially benefits State Farm Defendants and indirectly benefits the remaining Defendants, boycotting shops which refuse to comply with either fixed prices or use of substandard or improper parts, and interfering with Plaintiffs' current and prospective business relations by intentionally misrepresenting and making knowingly false statements regarding the quality, efficiency and ethical reputation of Plaintiffs' businesses, exerted economic duress and coercion upon both the Plaintiffs to capitulate and upon consumers, including direct threats to consumers to refuse coverage or portions of available coverage if consumers persist in their efforts to patronize Plaintiffs' businesses.

(Id. at ¶ 44).   Defendants' actions are alleged to "have caused a complete eradication of competition within the body shop industry."   (Id. at ¶ 45).

Plaintiffs filed their original complaint in the United States District Court for the Western District of Tennessee on April 22, 2014 (Doc. 1).   Defendants moved to dismiss and before the motions were fully briefed, the United States Judicial Panel on Multidistrict Litigation transferred this and three other cases to this district for coordinated or consolidated pretrial proceedings before Senior District Judge Gregory A. Presnell.   In re Auto Body Shop Antitrust Litigation, 37 F. Supp. 3d 1388 (J.P.M.L. Aug. 8, 2014).   This Court dismissed Plaintiffs' quasi estoppel count with prejudice, and their other claims without prejudice, with leave to amend (Docs. 78, 84).

Plaintiffs' amended complaint alleges price fixing and illegal boycott in violation of the Sherman Act, 15 U.S.C. § 1, and state-law claims for tortious interference with business relations and quantum meruit (Doc. 85).   On March 7, 2016, the Court dismissed Plaintiffs' antitrust claims with prejudice (Doc. 106).

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the  sufficiency of the complaint; it does not decide the merits of the case.   Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984).   In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011).   The Supreme Court has explained that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." Twombly, 550 U.S. at 546.   The court should liberally

construe the complaint's allegations in the plaintiff's favor.   Jenkins v. McKeithen, 395

U.S. 411, 421 (1969).   But, a claim for relief "requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."   Id. at 555.

"Factual allegations must be enough to raise a right to relief above the speculative

level[.]"   Id.   A complaint must be dismissed if it does not plead "enough facts to state a

claim to relief that is plausible on its face."   Id. at 570.   Legal conclusions devoid of

factual support are not entitled to an assumption of truth.   Mamani v. Berzain, 654 F.3d

1148, 1153 (11th Cir. 2011) (citing Iqbal, 556 U.S. at 678); Davila v. Delta Air Lines, Inc.,

326 F.3d 1183, 1185 (11th Cir. 2003).

## III. Discussion

Count III: Tortious Interference with Business Relations

To state a claim for tortious interference with business relations under Tennessee

law, a plaintiff must plausibly plead:

> (1) an existing business relationship with specific third parties
> or a prospective relationship with an identifiable class of third
> persons; (2) the defendant's knowledge of that relationship
> and not a mere awareness of the plaintiff's business dealings
> with others in general; (3) the defendant's intent to cause the
> breach or termination of the business relationship; (4) the
> defendant's improper motive or improper means; and ... (5)
> damages resulting from the tortious interference.

Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002).   "The

business relationships protected by this tort 'include any prospective contractual relations

… if the potential contract would be of pecuniary value ….'"   Watson's Carpet & Floor

Coverings, Inc. v. McCormick, 247 S.W.3d 169, (Tenn. Ct. App. 2007) (quoting the

Restatement (Second) of Torts § 766B, cmt. C. (1979)).

Plaintiffs allege that Defendants have tortuously interfered in their businesses by making misleading and false statements to steer prospective customers away from Plaintiffs' shops (Doc. 85, ¶ 439).   The amended complaint alleges three instances of successful steering by Defendants (Id. at ¶¶ 258-59, 263, 269).   Plaintiffs admit that Defendants' unsuccessful attempts to steer customers are not actionable since Plaintiffs did not incur damages (Doc. 92 at 56).   Plaintiffs also allege tortious interference based upon Defendants' alleged boycott of their shops (Doc. 85, ¶¶ 439, 446).   The Court has rejected Plaintiffs claims of boycott, noting "there are no allegations in the First Amended Complaint that any Defendant (much less all of them) has ever refused to do business with any of the Plaintiffs."   (Doc. 106 at 16).

The tortious interference count begins at paragraph 437 of the amended complaint.   No preceding paragraphs are incorporated by reference.   If the earlier paragraphs are excluded then the amended complaint fails to state a cause of action for a host of reasons.   The alternative, and what I believe Plaintiffs intended, is that all 436 preceding paragraphs are included in this count.[1]

The amended complaint routinely alleges conduct committed by "Defendants," meaning all 31 insurance companies named in the case, against "Plaintiffs" who are four auto body shops.   When Plaintiffs do refer to Defendants by name they do not distinguish between related companies.   For example, when Plaintiffs say "Nationwide"

---

[1] In their response to the motions to dismiss Plaintiffs state: "The facts supporting this cause of action are set out in over seventy pages of facts.   Hartford's argument they must be re-alleged with the same degree of specificity in the section of the complaint identifying the applicable causes of action is unsupported by any authority.   This section of the FAC is not intended to duplicate the entire facts section but to identify the law under which the Plaintiffs make claims.   Including complete duplication of facts is not required.   Or if such duplication is required, the Defendants have failed to identify their authority for the statement.   Plaintiffs would also point out that they would have incorporated by reference the facts preceding the designation of the cause of action but that has already been done and the Defendants complained about that too."   (Doc. 92 at 53-54).

they do not distinguish between Defendants Nationwide Property and Casualty Insurance

Company and Nationwide Mutual Insurance Company, and references to "State Farm" do

not distinguish between Defendants State Farm Mutual Automobile Insurance Company

and State Farm Fire and Casualty Company.   The Court discussed Plaintiffs' lack of

specificity in a prior Order:

> As for the tortious interference claim, Magistrate Judge Smith
> concluded that the allegations were implausible, in that the
> Plaintiffs were alleging that all of the Defendants were
> interfering with the business of all of the Plaintiffs, including
> those with whom the Defendants had DRPs.   Magistrate
> Judge Smith concluded that the generalized, shotgun nature
> of the Plaintiffs' contentions does not satisfy the applicable
> pleading standard and recommended that, in any amended
> complaint, the Plaintiffs be required to specify which
> Defendants interfered with which Plaintiffs.   The Plaintiffs
> contend that this is an impractical pleading standard because
> it seeks to compel them to produce information "which is
> peculiarly within the possession and control of the
> Defendants."   But there is nothing in the Complaint that
> explains why the Defendants, but not the Plaintiffs, would
> have this information.   Surely the Plaintiffs must have some
> basis to believe that certain Defendants interfered with certain
> of the Plaintiffs' customers.   A general allegation that some
> unidentified Defendants-or all Defendants-interfered with
> some unidentified customers of some unnamed Plaintiff does
> not satisfy the requirements of <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,
> 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

<u>Brewer Body Shop, LLC v. State Farm Mut. Auto. Ins. Co.</u>, No. 6:14-cv-6002-Orl-31TBS,

2015 WL 1911418, at *1 (M.D. Fla. April 27, 2015).

Despite the Court's guidance Plaintiffs have done little to correct the pleading

defects in their amended complaint, and they continue to assert that the evidence to

prove their tortious interference claim is within the control and possession of Defendants

(Doc. 92 at 55-56).   Plaintiffs contend that their failure to allege which Defendants

interfered with which prospective customer relationships is not fatal to their claims

because they have alleged prospective relationships with an identifiable class of third persons (Id.).   That class is described as "those who identify the Plaintiffs, respectively, as the choice of body shop to perform repairs."   (Doc. 85, ¶ 440).   Construing Plaintiffs' averments in the light most favorable to them, they are asserting that when someone informs a Defendant that she is going to take her damaged vehicle to one of the Plaintiffs' shops, the Defendant attempts to steer that person to one of the Defendant's preferred shops.   Plaintiffs maintain that these individuals are an identifiable class.   Defendants argue that this definition is inadequate to satisfy the first element of Plaintiffs' tortious interference claim.   The parties have not cited, and I have not located, a Tennessee case which provides guidance in determining what constitutes "an identifiable class of third persons."   Trau-Med., 71 S.W.3d at 701.

In my last report and recommendation, I said "Plaintiffs complaint identifies a specific class of third persons–'insureds and[] claimants who called Defendants and identified Plaintiffs as their choice of repair facility'–with whom Plaintiffs had prospective business relationship that Defendants knew about."   (Doc. 78 at 10-11) (internal citation omitted).   Still I concluded, and the Court agreed, that Plaintiffs' tortious interference claim was too generalized and the manner in which it was plead was not permissible (Id. at 11-12; Doc. 84 at 2).   The amended complaint has not corrected this problem.   This case was filed April 22, 2014.   After almost two years, Plaintiffs have only identified three instances where a customer was successfully steered by a Defendant.

With three exceptions, what is missing from the amended complaint are averments of fact to supply the who, what, when, where, and how to support Plaintiffs' claims of tortious interference.   In the absence of these facts it is not plausible to believe that every Defendant made the same statements to every prospective customer, or that every

customer who elected to use one of Defendants' preferred shops was unlawfully steered by a Defendant.

The over breadth of Plaintiffs' generalized averments is evidenced by the facts alleged in the amended complaint.   They demonstrate that there are material variations in the facts pertaining to each customer Plaintiffs believe was successfully steered by a Defendant.   Additionally, the specific allegations of interference do not support Plaintiffs' general allegations that Defendants have made misrepresentations about the quality and integrity of Plaintiffs' businesses.

By commingling the factual allegations against all Defendants, re-alleging every factual allegation in the antitrust counts in the tortious interference count, and failing to aver specific conduct by specific Defendants, Plaintiffs have impermissibly placed the burden on Defendants and the Court to determine which allegations are brought against which Defendants.

Plaintiffs have failed to inform most Defendants and the Court of even one prospective relationship with which the majority of the Defendants allegedly interfered. This is not credible.   Plaintiffs may not always know whose business they lost, or why they lost the business, but each Plaintiff should be able to identify at least one customer relationship with which each Defendant successfully interfered.

For all of the reasons discussed above, the amended complaint is an impermissible group pleading and shotgun pleading.   And, with the exception of three identified customers, it does not raise Plaintiffs' "right to relief above the speculative level."   Twombly, 550 U.S. at 555.

Plaintiffs allege the following instances where a known person was successfully steered by a Defendant:

258.   In September, 2014, consumer K. Fayne notified Nationwide of the intention of taking the damaged vehicle to Plaintiff ICON Collision for repairs.   Per Fayne, the Nationwide customer service representative seemed "offended" by the choice of ICON.   Nationwide repeatedly urged Fayne to take the vehicle to its DRP shop, Collisionworx, first by the customer service call center representative then again by the adjuster, Brad Carter. Fayne was told repeatedly Nationwide would only guarantee the work of Collisionworx, not ICON, that Nationwide could not "stand behind [ICON's] work."   Fayne interpreted this to mean ICON did not warrant its work and Nationwide's representations cast ICON in a bad light.

259.   Bowing to Nationwide's pressuring, Fayne took the vehicle to Collisionworx but the repairs were unsatisfactory.…

263.   B. Christensen took her vehicle to Plaintiff ICON for an estimate.   Upon being told the vehicle was taken to ICON, Defendant Liberty Mutual advised Christensen the vehicle had to be taken to its preferred shop, Joe Stewart's.   Liberty Mutual told Christensen it didn't know who ICON was and it would only guarantee the repair work if the vehicle was taken to Joe Stewart's.   Christensen did not return to ICON but went to Joe Stewart's.

269.   In 2011, after B. Espinoza made a claim with State Farm and stated the vehicle would be repaired at Plaintiff AAA Collision, State Farm told Espinoza it was required the vehicle be taken to its DRP shop, ABRA, for repairs.   As a result, Espinoza had the vehicle repaired by ABRA.

(Doc. 85, ¶¶ 258-59, 263, 269).

So long as improper means or motives are not employed, there is nothing actionable about an insurer encouraging someone to use a preferred body shop for repairs.   Nationwide and Liberty Mutual argue that none of the statements attributed to them are misleading or false (Doc. 86, n. 8).   But, the amended complaint alleges that Defendants do not guarantee repairs regardless of who does the work (Id. at ¶¶ 285-286). Assuming this to be true, the statements by Nationwide and Liberty Mutual that they would guarantee work performed by their preferred shops was misleading and false.

These Defendants' false statements could plausibly prevent the formation of business relationships.   It is also plausible to infer that is exactly what Defendants intended.   <u>Cf</u>. <u>Truslow v. State</u>, 31 S.W. 987 (Tenn. 1895) ("The law presumes a man intends what he does, and the usual and natural consequences of his acts.").

State Farm argues that paragraph 269 is not actionable because it does not allege that State Farm utilized improper means, or had improper motives in its dealings with Espinosa (Doc. 87 at 21).   I disagree.   The amended complaint alleges that the statements State Farm made to Espinoza were false, which is sufficient to allege improper means (Doc. 85, ¶¶ 253, 443).

In addition to the false statements attributed to Nationwide, Liberty Mutual, and State Farm, Plaintiffs generally allege that Defendants would have paid the same amount for the repairs regardless of who performed them, so the only reasonable explanation for Defendants' actions was to punish Plaintiffs, damage them, and compel them to submit to Defendants' pricing practices (Doc. 85, ¶ 442).   These averments allege an improper motive.

Considered as a whole, I find these allegations sufficient to state a claim for tortious interference with business relations under Tennessee law by Plaintiff Icon Collision Services, LLC, against Defendants Nationwide Property and Casualty Insurance Company, Nationwide Mutual Insurance Company with respect to customer K. Fayne; by Icon against Defendant Liberty Mutual Fire Insurance Company with respect to customer B. Christensen; and by Plaintiff AAA Collision Center, LLC, against Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company with respect to customer B. Espinoza .   <u>See Trau-Med of Am., Inc.</u>, 71 S.W.3d at 701.

The amended complaint contains the following averments concerning potential customers who did not have their vehicles repaired by a Plaintiff:

> 264.   Consumer C. Dickerson initiated a repair with Plaintiff ICON.   GEICO sent Dickerson to its DRP preferred shop, Service King.   The transaction with ICON was never completed.

> 265.   Consumer A. Ibrahim brought a damaged vehicle to Plaintiff ICON, stating great upset with State Farm for insisting the vehicle had to be taken to one of its preferred shop.   The pressure was apparently so great, the consumer stated a claim would probably have to be filed with the first-party insurer (State Farm being the tortfeasor's liability carrier). Ibrahim did not return to ICON after obtaining an estimate.

(Doc. 85, ¶¶ 264-65).   These events do not rise to the level of tortious interference with business relations.   There are no allegations that Geico and State Farm knew about the customers' relationships with Icon or that they acted with an improper motive or used improper means.   To the contrary, the amended complaint does not allege that State Farm took any action after Ibrahim took his vehicle to Icon.

The amended complaint avers the following instances of alleged interference with Plaintiff Brewer Body Shop's prospective customers:

> 271.   Upon information and belief, Progressive claims center personnel regularly and routinely tell consumers who have identified Plaintiff Brewer as the repair shop of choice they cannot go to Brewer because "We (Progressive) do not do business with that shop."   This is told to both first- and third-party claimants.

> 272.   Upon information and belief, GEICO adjuster Michael Corder regularly and routinely tells consumers who have identified Plaintiff Brewer as the repair shop of choice they should not go to Brewer because they (the consumer) will be financially responsible for whatever GEICO chooses not to pay.   This is told to both first- and third-party claimants.

> 273. Upon information and belief, Safeco adjuster Ron Henderson regularly and routinely tells consumers who have

> identified Plaintiff Brewer as the repair shop of choice they
> should not go to Brewer because Brewer "gouges the
> insurance companies."

(Doc. 85, ¶¶ 271-73).   These allegations are insufficient to state a cause of action for

tortious interference with business relations.   Plaintiffs do not allege that any Defendant

succeeded in steering any customer away from Brewer or that Brewer suffered any

damages as a result of the alleged statements.

Some of the Defendants argue that because they have contractual relationships

with their insureds, any alleged interference is privileged (Doc. 86 at 21).   Plaintiffs

counter that Tennessee law does not recognize a privilege to interfere in these

circumstances (Doc. 92 at 56).   The parties have not cited and I have not located a

Tennessee case discussing this issue.[2]   One secondary authority does say: "Liability for

interference with a business relationship will not be imposed if the defendant can show a

justification or privilege for such interference; for example, if the interference is for the

protection of another or of the public interest."   5 Tenn. Prac., Civ. Proc. Forms § 8:181.

There is no citation of authority to support this statement.   When the Tennessee

Supreme Court recognized the tort of tortious interference with a prospective business

relationship it cited the Restatement (Second) Torts § 766B & cmt. C (1979) with

approval.   Trau-Med of Am., Inc., 71 S.W.3d at 700.   The Restatement approaches

interference by asking whether it is proper or improper as opposed to considering the

existence or non-existence of a privilege.   Restatement (Second) Torts § 767 & cmt. B

(1979).   Consequently, I do not believe there is sufficient legal authority for the Court to

conclude that Tennessee courts will recognize privilege as a defense to a claim of tortious

---

[2] Tennessee does recognize that if a contract is terminable at will then the privilege of competition permits competitors to interfere to acquire the business for themselves.   Polk and Sullivan, Inc. v. United Cities Gas Co., 783 S.W.2d 538, 543 (Tenn. 1989).

interference.   To the extent Defendants rely on privilege, it is best asserted as an

affirmative defense.

The amended complaint alleges that Defendants initiated direct repair programs

("DRPs") which they have employed to suppress repair costs (Doc. 85, ¶¶ 94, 97).

Defendants that have DRPs allegedly

> require a shop to not only accept fixed prices on labor, fixed
> prices on paint and materials, fixed pricing procedures on
> parts, refusal to compensate or fully compensate for
> processes and procedures, but many compel the shop to
> include the DRP sponsor as an additional insured on the
> shop's liability insurance (even though the sponsor holds no
> lien or other ownership interest), compel indemnification for
> liability assessed to the sponsor, compel primary assumption
> of liability for repairs using parts provided by or insisted upon
> by the sponsor, compel mandatory production of the shop's
> financial information and books upon demand, and authority to
> obtain background checks upon the shop's employees at the
> sponsor's will and pleasure.

(Id. at ¶ 102).   These averments are followed by allegations that the "DRP agreements

are not enforceable contracts."   (Id. at ¶ 106).   Some Defendants argue that the

assertion in paragraph 106 is a legal conclusion that does not invalidate the obvious

contractual nature of the DRPs alleged in paragraph 102 (Doc. 86 at 18-19).   If the Court

agrees and finds that the DRPs are alleged to be enforceable contracts, that would defeat

Plaintiffs claims against Defendants during those periods of time in which a Plaintiff and

Defendant were party to a DRP.   But, it is impossible to tell from the amended complaint

which Plaintiffs had DRPs with which Defendants during which periods of time.

Therefore, I respectfully recommend the Court treat this matter as a potential affirmative

defense.

For these reasons, with the exception of the claims asserted in paragraphs 258,

259, 263 and 269 of the amended complaint, I respectfully recommend that the count for

tortious interference with business relationships be dismissed.   Given the amount of time

Plaintiffs have had to investigate this claim, and their demonstrated inability to come

forward with more facts than are alleged in the amended complaint, I recommend that the

dismissal be with prejudice.

Count IV: Quantum Meruit

        The Tennessee Supreme Court has described quantum meruit as "an equitable

substitute for a contract claim" that allows a party to "recover the reasonable value of

goods and services provided to another."   Swafford v. Harris, 967 S.W.2d 319, 324

(Tenn. 1998).   The elements of a claim for quantum meruit are:

> 1.   There is no existing, enforceable contract between the
> parties covering the same subject matter;
>
> 2.   The party seeking recovery proves that it provided
> valuable goods or services;
>
> 3.   The party to be charged received the goods or services;
>
> 4.   The circumstances indicate that the parties to the
> transaction should have reasonably understood that the
> person providing the goods or services expected to be
> compensated; and
>
> 5.   The circumstances demonstrate that it would be unjust for
> a party to retain the goods or services without payment.

Id.

        Plaintiffs are in the business of repairing vehicles for profit (Doc. 85, ¶¶ 450-53).

They complain that State Farm fixes the market rates for parts and repairs and that

Defendants have collectively engaged in an ongoing, concerted, and intentional

campaign to improperly and illegally control and depress automobile damage repair costs

(Id. at ¶¶ 43, 165).   Specifically, Defendants impose a fixed price structure that does not

fully compensate Plaintiffs for the services they provide (Id. at ¶¶ 102, 110, 117, 120-24,

135).   When it comes to payment, Defendants' position is "take it or leave it."   (Id. at ¶

123).   Despite Plaintiffs' alleged conduct, Plaintiffs have agreed to perform repairs and

they do not allege that Defendants have failed to pay them for the work they have done

(Id. at ¶¶ 123, 136-37, 139-40, 164, 200, 453-54; Doc. 92, p. 56).   Instead, Plaintiffs

complain that Defendants have failed to make "full payment" because Plaintiffs' services

are worth more than the prices paid by Defendants (Doc. 85, ¶¶ 200, 453-54; Doc. 92, p.

56).   Plaintiffs argue that they have stated a cause of action for quantum meruit because

no contracts are mentioned in the amended complaint,[3] they deny agreeing to

Defendants' prices, and they allege that they conferred a benefit on Defendants (the

existence of which Plaintiffs argue, is a question of fact reserved to the jury) (Id.).   Again,

I disagree.

   To prevail on a claim for quantum meruit, "'the circumstances must indicate that

the parties involved in the transaction should have reasonably understood that the person

providing the goods or services expected to be compensated.'"   Segneri v. Miller, No.

M2003-01014-COA-R3-CV, 2004 WL 2357996, at *5 (Tenn. Ct. App. Oct. 19, 2004)

(quoting Castelli v. Lien, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995)).   Plaintiffs must

therefore aver facts showing that they performed the work under circumstances in which

a person could reasonably expect additional compensation, or "full payment" based on

what Plaintiffs believe their services are worth.   See V. L. Nicholson Co. v. Transcon Inv.

& Fin. Ltd., Inc., 595 S.W.2d 474, 482 (Tenn. 1980) ("Thus a promise to pay will only be

implied when the work was performed under circumstances in which a person could

reasonably expect to be compensated by the party benefited."); W.F. Holt Co. v. A & E

---

[3] This is debatable given the averments concerning the DRPs.

Elec. Co., 665 S.W.2d 722, 737 (Tenn. Ct. App. 1983).   Plaintiffs' allegations, construed

in the light most favorable to them, show that they agreed to perform repairs knowing

what the Defendants were willing to pay, and that Defendants had always refused to pay

more than those prices.   Consequently, Plaintiffs could not, under any level of

reasonableness, have expected to be paid more than what they received.   For this

reason, I respectfully recommend that the quantum meruit count be dismissed.

The quantum meruit count also fails because Plaintiffs have not conferred a benefit

on Defendants.   Plaintiffs render their services to the vehicle owners, not the Defendants,

who incur an obligation to pay for the repairs.   In A&E Auto Body, Inc. v. 21st Century

Centennial Ins. Co., No. 6:14-cv-310-Orl-31TBS, 2015 WL 304048, at *5 (M.D. Fla. Jan.

21, 2015), the Court explained:

> The efforts to state a claim in Counts I and II fail because the
> Plaintiffs have not conferred a benefit upon the Defendants.
> The Plaintiffs point to the repairs they performed, asserting
> that they "benefitted Defendants and Defendant's
> insured/claimants for whom Defendants are required to
> provide payment for repairs."   (Amended Complaint at 43).
> However, the Amended Complaint provides no support for this
> assertion.   The repairs at issue obviously provided a benefit
> to the owners of the vehicles.   But so far as the Amended
> Complaint discloses, the only effect of such a repair on the
> insurance company is the incurring of an obligation to pay for
> it.   Cf. Adventist Health System/Sunbelt, Inc. v. Medical Sav.
> Ins. Co., 2004 WL 6225293 at *6 (M.D. Fla. Mar. 8, 2004)
> (Fawsett, J.) (in unjust enrichment case, stating that "a third
> party providing services to an insured confers nothing on the
> insurer except a ripe claim for reimbursement," and citing
> cases).

The same reasoning applies here.   Plaintiffs have not alleged that any repairs are

done at Defendants' request, that Defendants have a duty to repair the vehicles, or that

repairing vehicles saves Defendants from expense or loss.   See e.g., Swafford, 967

S.W.2d at 324 (a claim for quantum meruit requires proof that, *inter alia*, the party seeking

recovery provided valuable goods or services and that the party to be charged received the goods or services); Restatement (First) of Restitution § 1 cmt. b (1937) (defining "benefit").   Plaintiffs argue that "Defendants are required to provide payment for repairs" and that performing repairs "benefitted Defendants and Defendant's insured/claimants." (Doc. 85, ¶ 450).   But, they fail to identify the "benefit" they conferred on Defendants. Accordingly, I respectfully recommend that the quantum meruit count also be dismissed on this ground.

The Court previously dismissed the quantum meruit count because Plaintiffs had alleged that they entered into contracts (the DRPs), with Defendants.   The Court found that the contracts precluded Plaintiffs' equitable claim based on a contract implied in law[4] (Docs. 78, pp. 5-6; 84, p. 1).   If the Court disregards, as legal conclusions, the averments that the DRPs are not enforceable contracts, then the quantum meruit count is also subject to dismissal on this ground.

Finally, the quantum meruit count fails because it is a group and shotgun pleading. This count begins at paragraph 449 of the amended complaint, is apparently intended to include all of the preceding averments, and refers to the parties collectively as "Plaintiffs" and "Defendants."   Like the tortious interference count, the quantum meruit count does not contain the information necessary to adequately inform Defendants or the Court about the repairs for which additional compensation is sought, or the identity of the customers, Plaintiffs, and Defendants associated with those repairs.

---

[4] The existence of a valid contract governing the parties' relations precludes any quantum meruit or unjust enrichment claim under Tennessee law.   Gen. Agents Ins. Co. of Am., Inc. v. Mandrill Corp., Inc., 243 F. App'x 961, 969 (6th Cir. 2007) ("As the district court noted, quantum meruit is a remedy available in Tennessee when there is no existing, enforceable contract governing payment for the services rendered. Since the CGL Policy is an existing, enforceable contract governing such payment, quantum meruit is unavailable.").

Because I see no realistic way for Plaintiffs to overcome these impediments to their quantum meruit claims, I respectfully recommend that this count be dismissed with prejudice.

## IV. Recommendation

Now, I **RESPECTFULLY RECOMMEND** that with the exception of Plaintiff's claims for tortious interference with business relations by (1) Plaintiff Icon Collision Services, LLC, against Defendants Nationwide Property and Casualty Insurance Company and Nationwide Mutual Insurance Company, paragraphs 258-259 of the amended complaint; (2) Plaintiff Icon Collision Services, LLC, against Defendant Liberty Mutual Fire Insurance Company, paragraph 263 of the amended complaint; and (3) AAA Collision Center, LLC, against Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, paragraph 269 of the amended complaint, all of Plaintiffs' state law claims be dismissed with prejudice.

## V. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on March 17, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record