IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

| | |
|---|---|
| BREWER BODY SHOP, LLC, *et al.*, | * |
| | * |
| PLAINTIFFS, | * MDL Docket No. 2557 |
| | * |
| v. | * Case No. 6:14-cv-6002-GAP-TBS |
| | * |
| STATE FARM MUTUAL AUTOMOBILE | * ORIGINALLY FILED IN THE |
| INSURANCE COMPANY, *et al.*, | * WESTERN DISTRICT OF TENNESSEE |
| | * |
| DEFENDANTS. | * |

**PARTIAL OBJECTION OF DEFENDANTS NATIONWIDE MUTUAL INSURANCE COMPANY AND NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Defendants Nationwide Mutual Insurance Company and Nationwide Property and Casualty Insurance Company (collectively, "Nationwide") respectfully object in part to Magistrate Judge Thomas B. Smith's Report and Recommendation (Doc. 107) ("R&R") to the extent it recommends that a single alleged instance of steering in the First Amended Complaint (Doc. 85) ("FAC") states a claim for tortious interference with business relations against Nationwide under Tennessee law (R&R at 10-11, 13-15).[1] Nationwide requests that the Court otherwise adopt the R&R and dismiss the FAC in its entirety, with prejudice.[2]

**I.     INTRODUCTION.**

At the outset, the R&R acknowledges, but errs in excusing, the following deficiencies in the FAC: (1) its failure to incorporate by reference all paragraphs preceding paragraph 437 where the tortious interference count begins and stating that "[i]f the earlier paragraphs are excluded then the [FAC] fails to state a cause of action" for tortious interference (R&R at 6); and (2) its

---

[1] A District Court reviews *de novo* any portion of a magistrate judge's disposition of a dispositive motion to which a party has properly objected.  Fed. R. Civ. P. 72(b)(3); *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 n.3 (11th Cir. 2011).
[2] The Court has already dismissed plaintiffs' antitrust claims with prejudice.  *See* Order (Doc. 106).

continued failure to specify which Nationwide entity committed the alleged tortious interference and stating that "[d]espite the Court's guidance Plaintiffs have done little to correct the [shotgun and group] pleading defects in their amended complaint" (R&R at 6-7, 9). The tortious interference claim should be dismissed with prejudice for both reasons alone.[3]

In addition to the above pleading deficiencies, the FAC does not come close to stating a claim for tortious interference with business relations against Nationwide under Tennessee law. As the R&R correctly acknowledges, plaintiffs cannot state such a claim unless they "plausibly" plead all five of the following elements:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and . . . (5) damages resulting from the tortious interference.

R&R at 5 (quoting *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002)).

In addressing the elements, the R&R truncates the FAC's allegations against Nationwide as to consumer K. Fayne, relying only on the following paragraphs in its analysis:

> 258. In September, 2014, consumer K. Fayne notified Nationwide of the intention of taking the damaged vehicle to Plaintiff ICON Collision for repairs. Per Fayne, the Nationwide customer service representative seemed "offended" by the choice of ICON. Nationwide repeatedly urged Fayne to take the vehicle to its DRP shop, Collisionworx, first by the customer service call center representative then again by the adjuster, Brad Carter. Fayne was told repeatedly Nationwide would only guarantee the work of Collisionworx, not ICON, that Nationwide could not "stand behind [ICON's] work." Fayne interpreted this to mean ICON did not warrant its work and Nationwide's representations cast ICON in a bad light.
>
> 259. Bowing to Nationwide's pressuring, Fayne took the vehicle to

---

[3] The allegations in the FAC concerning Ms. Fayne fail to identify which Nationwide entity purportedly made the statements at issue, and therefore constitute impermissible group pleading.

Collisionworx but the repairs were unsatisfactory….

Despite the fact the alleged statements and conduct by Nationwide's representatives, assuming they occurred, were entirely truthful, proper, and lawful, the R&R nevertheless concludes the above paragraphs sufficiently allege Nationwide:  (1) "successfully steered" Ms. Fayne (R&R at 9); (2) employed "improper means" by allegedly telling Ms. Fayne that it guaranteed the work of Collisionworx, a statement which the R&R finds could be "misleading and false" based upon plaintiffs' allegations that defendants "do not guarantee repairs regardless of who does the work" (R&R at 10); (3) had an "improper motive" in purportedly urging Ms. Fayne to have her vehicle repaired at Collisionworx because the FAC alleges "Defendants would have paid the same amount for the repairs regardless of who performed them, so the only reasonable explanation for Defendants' actions was to punish Plaintiffs, damage them, and compel them to submit to Defendants' pricing practices" (R&R at 11); and (4) is not entitled to a "privilege to interfere" because there is insufficient legal authority to conclude that such a privilege exists in Tennessee.  (R&R at 13-14).

In reaching the above conclusions, the R&R completely omits from its analysis the following additional allegations, which fail to allege that plaintiff ICON was damaged by Nationwide's purported interference:

> 259.   … Fayne returned the vehicle to Collisionworx to repair the outstanding issues. Collisionworx failed to make any additional successful repairs. Fayne notified Nationwide of the unsatisfactory repairs, the unsuccessful re-repair *and that the vehicle was being taken to ICON*, which had been the consumer's first choice, *not returned to Collisionworx*.
>
> 260.   *Plaintiff ICON performed an inspection of the vehicle* and found numerous incomplete, improper and simply unperformed repairs. The trunk lid was out of alignment and the trunk paint process was incomplete and insufficient. The left rear door was improperly refinished and protector was never applied. The left rear rocker trim gapped. The left quarter panel was not refinished, nor protector applied. No corrosion protection was applied to weld points of the

3

> quarter panel repairs. The trunk interior and parts of the interior were mildewed from water intrusion. There were numerous other improper refinishing procedures, as well as additional damage caused by Collisionworx. ***The cost to correct the additional damage and incomplete, improper or insufficient repairs of Nationwide's DRP was $1730.39.***
>
> 261.   Nationwide representative Daryl Smith denied Collisonworx was one of its preferred shops, stated that Nationwide's urging by two different Nationwide employees to take Fayne's vehicle there was a "miscommunication" and Nationwide was not responsible for the cost of fixing the vehicle. As a gesture, Smith stated he would ***facilitate getting payment from Collisionworx for the additional repairs*** but denied Nationwide's warranty applied to the repairs.

(emphasis added).  Considering the entirety of the allegations regarding Ms. Fayne, as explained below, the R&R's adverse findings against Nationwide are erroneous as a matter of Tennessee law.

## II.   ARGUMENT.

### A.   Nationwide Did Not Employ "Improper Means" Because Its Alleged Guarantee Of The Repairs By A Presumed DRP Shop Was Truthful.

The R&R concludes that plaintiff ICON successfully alleged Nationwide made a false representation regarding the source of repair guarantees:

> Nationwide and Liberty Mutual argue that none of the statements attributed to them are misleading or false (Doc. 86, n. 8).  But, the amended complaint alleges that Defendants do not guarantee repairs regardless of who does the work (Id. at ¶¶ 285-286).  Assuming this to be true, the statements by Nationwide and Liberty Mutual that they would guarantee work performed by their preferred shops was misleading and false.  These Defendants' false statements could plausibly prevent the formation of business relationships.

R&R at 10-11.  This is error because the cited paragraphs of the FAC do not support any such inference.  Indeed, the paragraphs cited by the R&R constitute the same type of indiscriminate group pleading that this Court has repeatedly found to be improper.  *See*, *e.g.*, *A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 6:14-cv-310-Orl-31TBS Order (Doc. 110) at ¶ 4 (M.D. Fla. June 11, 2014) (group pleading is inadequate); *Brewer* Order (Doc. 84) at 2-3

4

(adopting Brewer R&R).

But even if these allegations could properly be attributed to Nationwide, the cited paragraphs simply quibble over whether the guarantee is actually provided by the insurer, or whether the insurer requires the DRP shop to provide the guarantee as part of the DRP agreement with the insurer:

> 284.   Also reprehensible are the Defendants' assertions that Plaintiffs' work cannot be guaranteed but if the consumer goes to one of their network or preferred shops, the insurer will guarantee the work.
>
> 285.   This is deeply misleading for three reasons. First, no insurance company and certainly none of the named Defendants performs any repair work. Therefore there is nothing for them to guarantee and asserting to Plaintiffs' customers and potential customers they will guarantee the work is both misleading and inaccurate. As phrased, Defendants' guarantee assertions reasonably lead consumers to believe the repairs are guaranteed by the insurer, which they are not.
>
> 286.   A correct statement would be the Defendant insurers require network and preferred shops to guarantee their own work. However, reality has proven that even when repairs are performed at a network or preferred shop, neither the shop nor the insurer can or does live up to even this hypothetical statement. See, e.g., Nationwide's refusal to honor its purported repair warranty, above.

This is truly a distinction without a difference. From the consumer's perspective, the critical fact is the insurer is standing behind, or "guaranteeing," the work of a DRP shop. The insurer is the entity making sure that a guarantee is in place and the consumer is protected. There is nothing "deeply misleading" about this at all.

Indeed, ICON's own allegations are consistent with the DRP shop's work being guaranteed. ICON expressly alleges that Nationwide's representative informed Ms. Fayne that "he would facilitate getting payment from Collisionworx [the DRP shop] for the additional repairs[.]" FAC ¶ 261. Notably, ICON does *not* allege that Ms. Fayne had to pay for any such additional repairs herself.

There simply is no plausible allegation in the FAC that Nationwide made a false or

5

misleading statement to Ms. Fayne regarding the source of the guarantee. There also is no plausible allegation demonstrating that any purported confusion about whether the guarantee was coming from the insurer or the DRP shop somehow interfered with any purported business relationship. The R&R's conclusion on this point was in error and Nationwide's objection should be sustained.

### B.     Nationwide's Alleged Motive Was Not Improper Because Plaintiffs Allege Nationwide's Predominant Purpose Was To Profit, Not To Injure ICON.

The R&R concludes that Nationwide had an "improper motive" in purportedly urging Ms. Fayne to have her vehicle repaired at Collisionworx because the FAC alleges "Defendants would have paid the same amount for the repairs regardless of who performed them, so the only reasonable explanation for Defendants' actions was to punish Plaintiffs, damage them, and compel them to submit to Defendants' pricing practices" (R&R at 11). Once again, this allegation is both conclusory and improper group pleading. Further, to support the above conclusion, the R&R cites to paragraph 442 of the FAC, which *contradicts* the R&R's finding that "Defendants would have paid the same amount for the repairs regardless of who performed them" by alleging that certain vendors perform the same repair work at less cost:

> 442.   The purpose of these actions [insurers urging customers to take their business to DRP shops] are twofold: to punish the Plaintiffs who complained about or refused to submit to the various oppressive and unilateral price ceilings the Defendants were enforcing upon them, and *to direct potential customers of the Plaintiffs to other vendors who would comply with the maximum price ceilings unilaterally imposed by the Defendants.*

(Emphasis added). In addition to paragraph 442, the FAC is replete with allegations that Nationwide's (and the other defendant insurers') motive was to reduce costs and profit, not to injure non-DRP shops, such as ICON:

> 43.   Over the course of several years (as further described below), the Defendants have engaged in an ongoing, concerted and combined intentional

6

course of action and conduct to improperly and illegally control and depress automobile damage repair costs to the detriment of the Plaintiffs and the substantial profit of the Defendants.

\* \* \*

339.   Each of the Defendants has an obvious motive to agree, combine and conspire to fix prices, boycott and punish noncompliant shops and interfere with Plaintiffs' businesses at every possible level. Profit. [sic]

340.   If the profits were minimal, the value of such a combination or agreement would be questionable. However, the profits are not minimal.

\* \* \*

353.   Thus, these defendants [including Nationwide], and their subsidiaries, obtain a two-fold profit by steering customers . . . .

\* \* \*

374.   . . . The more insurers who participate in steering, compulsory parts purchases and paint cost manipulation, the greater the substantial profit for all.

\* \* \*

419.   . . . [Defendants'] actions [in establishing fixed rates] are clearly motivated by profit and self-interest . . . .

\* \* \*

459.   The defendants have successfully created a "market" system that rewards the body shops that will cut corners so they can increase profits . . . .

The Supreme Court of Tennessee has held there is no "improper motive" unless "the defendant's **predominant purpose** was to injure the plaintiff." *Freeman Mgt. Corp. v. Shurgard Storage Centers, LLC*, 461 F.Supp.2d 629, 640 (M.D.Tenn.2006) (quoting *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 n.5 (Tenn. 2002)) (emphasis added). Further, a defendant's "desire to benefit itself financially," even though it has an "indirect effect of damaging [the plaintiff] financially," does not establish the improper motive required to state a tortious interference claim. *Nat'l Fitness Ctr., Inc. v. Atlanta Fitness, Inc.*, 902 F.Supp.2d

7

1098, 1111 (E.D.Tenn.2012). Applying these principles, Tennessee courts have routinely dismissed interference claims where the allegations make plain that the defendant's predominate purpose was not to injure the plaintiff, but simply to benefit itself financially.

For example, in *Terra Aqua Gabions, Inc. v. Midwest Const. Products Corp.*, 2006 WL 2105996 (Tenn. Ct. App. July 28, 2006), the plaintiff alleged that the defendant business competitor interfered with a prospective contract by submitting a bid proposal that misrepresented that its product complied with applicable industry standards. *Id*. at *1. Despite this alleged misrepresentation, the court dismissed the interference claim. The court reasoned:

> Assuming that Midwest misrepresented that its gabions complied with ASTM standards, and assuming such misrepresentation was intentional, there is nothing to suggest that Midwest's predominant purpose was not simply to compete with Terra Aqua and all other manufacturers of gabions. Terra Aqua does not allege that Midwest misrepresented the quality of Terra Aqua's product, nor does it allege that Midwest directed any act at Terra Aqua. Assuming Midwest engaged in unfair competition by misrepresenting the quality of its products . . . there is nothing in Terra Aqua's complaint to suggest that Midwest's actions were directed purposefully at or against Terra Aqua for the predominant purpose of causing injury to Terra Aqua. *Id*. at *4.

The court reached a similar result in *Personal Computer Systems, Inc. v. Central Knox* ("PCS"), 2012 WL 1108245 (E.D. Tenn. Mar. 30, 2012). In that case, the plaintiff alleged that the defendant misrepresented the locations of its service centers on its website in an effort to lure business away from the plaintiff's prospective customer. *Id*. at *2. The plaintiff claimed such conduct evinced "improper" means or motive by the defendant. *Id*. The court disagreed and dismissed the interference claim. *Id*. at *4-*6. The court stated:

> The complaint contains no allegations that Central Knox made false statements about PCS's business or in any other way attempted to injure PCS. Rather, the court reads the allegations against Central Knox as merely competitive actions taken to try to win a bid. *Id*. at *5.

Here, as in *Terra Aqua* and *PCS*, the FAC contains no allegations that Nationwide made

8

any false or disparaging statements about ICON. At most, the FAC alleges that Nationwide misrepresented an attribute of its own business, namely that it guarantees the repairs of its DRP shops, and directed Ms. Fayne to a DRP shop, all in an effort to reduce its costs and increase profits. (FAC ¶¶ 258, 285-86.) Even assuming Nationwide's statement about its repair guarantee was misleading (which it was not for the reasons already discussed), such allegations do not show an improper means or motive as a matter of law. *See Terra Aqua*, *supra* at *4; *PCS*, *supra* at *5. Because the FAC itself alleges that Nationwide's "motive" in steering Ms. Fayne was to increase Nationwide's bottom line, the claim for tortious interference fails.

   **C.** **The R&R's Finding That A Privilege Does Not Apply To Nationwide's Communications With Ms. Fayne Is Incorrect.**

The R&R's additional finding that "I do not believe there is sufficient legal authority for the Court to conclude that Tennessee courts will recognize privilege as a defense to a claim of tortious interference" is mistaken. (R&R at 13-14). The Tennessee Court of Appeals has stated just the opposite: "we think the Tennessee Supreme Court, faced with the direct question, would hold that a competitor enjoys a privilege as to the improper motive requirement of the fourth element of the tort of intentional interference with business relationships." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 184 (Tenn.App.2007); *see also PPG Industries, Inc. v. Payne*, 2012 WL 1836314, *4 (E.D. Tenn. May 21, 2012) (acknowledging a "competitor's privilege regarding the showing of a bad motive for element four of the tort" of tortious interference with business relations under Tennessee law).

Importantly, the privilege is not limited solely to competitors, but is broadly intended to encourage "commercial contests" and "self-interest," and give businesses the "freedom or unfettered discretion to do business or not to do business with whomever [it] chooses for any reason that does not violate the law." *See Watson's Carpet*, 247 S.W.3d at 183 ("Whether the

9

competitive motive is cast in terms of *self-interest* or in terms of lessening the competition's success is, arguably, *purely semantics*.") (emphasis added); *id.* at 178 ("It is a principle of long standing in Tennessee that the general rule [is] that a person engaged in business may, at his election, and without good reason, *refuse to deal with some other person*. In other words, in Tennessee, a person has the freedom or unfettered discretion to do business or not to do business with whomever he or she chooses for any reason that does not violate the law.") (internal citations omitted) (emphasis added); *Trau-Med*, 71 S.W.3d at 699-700 ("Economic relationships short of contractual, . . . should stand on a different legal footing as far as the potential for tort liability is reckoned. Because ours is a culture firmly wedded to the social rewards of *commercial contests*, the law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties.") (emphasis added).

Further, in determining whether the privilege applies, the interests and perspectives of both parties, not just those of the plaintiff, must be taken into account:

> [T]o determine the reasonableness of such act [of interference with business complained of] it must be considered *from the standpoint of both parties*, with a view to ascertaining whether the defendant has acted merely in the due exercise of *his own right to carry on business for himself*. If this be found in his favor, while he may have done the plaintiff harm, he cannot be adjudged to have done an injury in the legal sense; that is, a wrongful act in violation of the legal right of another.

*Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 543-44 (Tenn.1989) (quoting with approval *Hutton v. Watters*, 132 Tenn. 527, 179 S.W. 134, 135 (Tenn.1915) (emphasis added); *see Norvell Skin Sols., LLC v. Solaire Pty Ltd.*, 2014 WL 3353246, *5 (M.D.Tenn. July 8, 2014) (stating that "this court finds no suggestion in *Trau-Med* that the decision was meant to abrogate *Polk & Sullivan* or that a competitor's privilege should not otherwise be available for a suit between competitors").

Plaintiffs do not, and cannot, reasonably dispute that Nationwide has a legitimate business interest in insuring that the vehicles belonging to its customers and claimants are repaired properly, timely, and in a cost-effective manner. *See Gunder's Auto Center v. State Farm Mut. Auto. Ins. Co.*, 422 F. App'x 819, 822 (11th Cir. 2011) (auto insurers have a legitimate, "protectable interest" and involvement in the "relationship between [auto body shops] and [their] insureds."); *Quality Auto Body, Inc. v. Allstate Ins. Co.*, 660 F.2d 1195, 1203 (7th Cir. 1981) (pressure on prices exerted by an insurer "encourages [auto body shops] to keep their costs down; and, for its own competitive advantage, (enables the insurer to pass) . . . along the savings thus realized to consumers.") (internal quotation marks and citation omitted)); *Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir.2009) ("the discounts negotiated between the insurance companies and the direct repair providers reflect the proper functioning of the market to bring about lower prices to consumers."). As the party financing the cost of repairs, Nationwide is certainly no stranger to the repair process, and has a right to recommend, and even require in Tennessee, that the repairs be performed at a particular shop.[4]

---

[4] The R&R incorrectly concludes that successful steering may serve as the basis for a tortious interference claim in Tennessee. (R&R at 6, 8-9). Tennessee law does not impose a statutory restriction on an insurer's ability to require that a particular repair shop be used. In fact, it implicitly allows an insurer to *require* that a consumer use a repair shop selected by the insurer:

> Any of the following acts by an insurer or person constitutes an unfair claims practice:
>
> * * *
>
> (14) If the insurer owns a repairer or requires a repairer to be used, the insurer's failure to adopt and implement reasonable standards to assure that the repairs are performed in a workmanlike manner[.]

Tenn.Code Ann. § 56-8-105(14). In other words, Tennessee law recognizes that an insurer may "require" a particular "repairer to be used," so long as the insurer "adopt[s] and implement[s] reasonable standards to assure that the repairs are performed in a workmanlike manner[.]" *Id*. The FAC does not allege, and the R&R does not find, that Nationwide failed to adopt and implement such reasonable standards. Accordingly, Nationwide would have been within its rights under Tennessee law to require that Ms. Fayne take her vehicle to Collisionworx, rather than ICON.

In addition, Nationwide has a First Amendment right to recommend to consumers the use of its preferred shops. *See*, *e.g.*, *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 164 (5th Cir. 2007) (Texas statute restricting insurer's

For these reasons, the Court should reject the R&R's conclusion that Tennessee law does not "recognize privilege as a defense to a claim of tortious interference"; hold that the privilege applies to Nationwide's truthful statements to Ms. Fayne; and dismiss the tortious interference claim against Nationwide in its entirety, with prejudice.

### D.    Plaintiffs Fail To Allege That ICON Incurred Any Damages.

The R&R correctly acknowledges that a tortious interference claim must be dismissed if the plaintiff has not been damaged. R&R at 5 (quoting *Trau-Med*, 71 S.W.3d at 701). The R&R, however, does not address the damages element, and plaintiffs' own allegations do not allege that ICON was damaged in any way. Specifically, the FAC alleges that after the alleged improper repairs by Collisionworx, Ms. Fayne took her vehicle to ICON; ICON estimated it would cost $1730.39 to repair the vehicle; and Nationwide "facilitate[d]" the "payment" for the additional repairs. FAC at ¶¶ 259-260. That Ms. Fayne allegedly took her vehicle to ICON, which presumably made the repairs and profited, undercuts the R&R's implied finding that Nationwide interfered with the alleged relationship between ICON and Ms. Fayne, to ICON's detriment. If Ms. Fayne ultimately did not have her vehicle repaired (for example, if it was declared a total loss or she chose not to repair, but to keep the settlement check), ICON could not have suffered any damages because it was not deprived of any business. Because the FAC does not allege that ICON was damaged, the FAC fails to state a claim for tortious interference against Nationwide.

### E.    The FAC Fails To Allege That ICON Had An Existing Or Prospective Relationship With Ms. Fayne Of Which Nationwide Had Knowledge.

To state a claim for tortious interference, the FAC must allege an existing or prospective business relationship between ICON and Ms. Fayne of which Nationwide had knowledge and

---

ability to recommend preferred shops held to be unconstitutional); *Safelite Group, Inc. v. Jepsen*, 764 F.3d 258 (2nd Cir. 2014) (similar Connecticut statute held to be unconstitutional).

interfered. R&R at 5 (quoting *Trau-Med*, 71 S.W.3d at 701). The FAC fails these requirements.

The FAC does not allege that ICON and Ms. Fayne had an "existing" business relationship. Specifically, plaintiffs do not claim that Ms. Fayne was ICON's current or prior customer; that ICON had ever performed repairs for Ms. Fayne; that ICON towed or stored the vehicle; or that Ms. Fayne had taken the vehicle to ICON for an estimate or even contacted ICON regarding the vehicle before she called Nationwide.

Therefore, to state a claim against Nationwide, the relationship between ICON and Ms. Fayne must have been a "prospective" relationship. Although Tennessee courts have not defined "prospective," its ordinary meaning is "[a]nticipated or expected; likely to come about." *See* PROSPECTIVE, Black's Law Dictionary (10th ed. 2014). Here, the FAC falls far short of pleading an "expected" or "likely" business relationship between ICON or Ms. Fayne, let alone one that Nationwide had "knowledge" of when Ms. Fayne spoke to Nationwide's representatives. Plaintiffs do not allege, for example, that Ms. Fayne and ICON had reached an agreement in principle governing the repair of her vehicle, or that ICON was ready, willing, and able, to do the repair work. And, even if such concrete steps were taken, the FAC does not allege that Ms. Fayne communicated them to Nationwide. From the perspective of Nationwide's representatives who spoke to Ms. Fayne, as alleged by Plaintiffs' here, ICON did not have a "prospective" business relationship with Ms. Fayne; it did not have *any relationship at all* with Ms. Fayne beyond a speculative one. Because the FAC does not plausibly allege an existing or prospective business relationship between ICON and Ms. Fayne of which Nationwide had knowledge and interfered, the tortious interference claim against Nationwide fails for this additional reason.

**III.     CONCLUSION**

For the above reasons, the Magistrate Judge partially erred to the extent he concluded that plaintiffs' allegations regarding K. Fayne were sufficient to state a claim for tortious interference with business relations against Nationwide under Tennessee law. Accordingly, Nationwide respectfully requests that the Court dismiss plaintiff ICON's tortious interference claim against Nationwide, and further dismiss the First Amended Complaint in its entirety, with prejudice.

Respectfully submitted,

/s/ Michael H. Carpenter
Michael H. Carpenter
Michael N. Beekhuizen
David J. Barthel
Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
(614) 365-4100 telephone
(614) 365-9145 facsimile
carpenter@carpenterlipps.com
beekhuizen@carpenterlipps.com
barthel@carpenterlipps.com

Mark J. Botti
Squire Patton Boggs (US) LLP
1200 19th Street, N.W., Suite 300
Washington, District of Columbia  20036
(202) 626-6600 telephone
(202) 626-6780 facsimile
mark.botti@squirepb.com

*Attorneys for Defendants Nationwide Mutual Insurance Company and Nationwide Property and Casualty Insurance Company*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 31st day of March, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record who are registered with the Court's CM/ECF system.

                                           /s/ Michael H. Carpenter
                                           Michael H. Carpenter

                                           One of the Attorneys for Defendants Nationwide Mutual Insurance Company and Nationwide Property and Casualty Insurance Company