# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

BREWER BODY SHOP, LLC, et al.,

     Plaintiffs,

v.                                                                    Case No: 6:14-cv-6002-Orl-31TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

     Defendants.

_____

## ORDER

This matter comes before the Court on the Report and Recommendation (Doc. 107) filed by Magistrate Judge Smith regarding the motions to dismiss (Doc. 86-88) filed by three groups of Defendants.   After considering the motions, the Plaintiffs' response (Doc. 92), and the replies (Doc. 95-97) filed by the Defendants, Judge Smith recommended that, aside from three tortious interference claims, all of the Plaintiffs' remaining state law claims be dismissed with prejudice. (Doc. 107 at 19).   The Plaintiffs filed an objection (Doc. 108) to the Report and Recommendation, and the Defendants filed objections (Doc. 110-113) to the recommendation that the three tortious interference claims be allowed to proceed.   Certain Defendants also filed responses (Doc. 115, 119) to the Plaintiffs' objection.

### I.        Background

The instant case is one of 24 similar actions, consolidated for pretrial purposes, in which auto repair shops in a particular state have accused insurance companies of conspiring to suppress the amounts they are obligated to pay for automobile repairs in violation of Section I of the Sherman Antitrust Act and various state laws.   This case was originally filed in the Western District of

Tennessee, and was transferred to this Court by order of the United States Judicial Panel on

Multidistrict Litigation on August 13, 2014.   (Doc. 64).   On April 27, 2015, the Court adopted a

Report and Recommendation (Doc. 78) (henceforth, the "First R&R") and dismissed all of the

claims asserted in the Plaintiffs' Complaint (Doc. 1).   (Doc. 84).   Subsequently, the Plaintiffs filed

their First Amended Complaint (Doc. 85) (henceforth, the "FAC").   In that document, the Plaintiffs

asserted two claims for alleged violations of the Sherman Act (Counts I and II), plus state law claims

for tortious interference with business relations (Count III) and quantum meruit (Count IV).   The

Sherman Act claims have been dismissed with prejudice via a separate order (Doc. 106).

## II.   Law of the Case

At the outset, the Plaintiffs argue that a number of the determinations of the current Report

and Recommendation are barred by the law of the case doctrine.   Specifically, they assert that the

First R&R "did not mention problems [such as] group pleading [and] shotgun pleading," which are

identified in the current Report and Recommendation as grounds for dismissal.   (Doc. 108 at 1-2).

The First R&R was adopted by the Court in the order (Doc. 84) that dismissed the Complaint.   By

adopting the First R&R, the Plaintiffs now argue, the Court agreed that the only pleading

deficiencies were those identified in that document, and the Court cannot now determine that other

pleading deficiencies exist.   (Doc. 108 at 2).

This argument is incorrect in several ways.   The pleadings at issue in the earlier Report and

Recommendation and this one are different, and therefore determinations regarding the Complaint

do not necessarily apply to the Amended Complaint.   In any event, a finding that a pleading suffers

from a certain deficiency is *not* a finding that the pleading (or an amended version of it) is adequate

in all other respects.   The law of the case doctrine does not bar consideration of matters that could

have been, but were not, resolved in earlier proceedings.   *Thomas v. U.S.*, 572 F.3d 1300, 1304

(11th Cir. 2009).   The issues of which the Plaintiffs now complain were not resolved in the earlier Report and Recommendation and therefore the law of the case doctrine cannot apply.

Moreover, the law of the case doctrine only bars a trial court's revisiting of an earlier decision where there is an intervening decision of the appellate court on point.   *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir. 1984) (citing *United States v. Robinson*, 690 F.2d 869, 872 (11th Cir. 1982).   Otherwise, "any order or other decision, however designated … may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."   Fed.R.Civ.P. 54(b).   There has been no intervening appellate decision here, so the Court remains free to revisit any previous determinations.

### III.   Tortious Interference

In Count III, the Plaintiffs assert that the Defendants have tried to harm them by

> steer[ing] and attempt[ing] to steer customers away from Plaintiffs'
> respective businesses through their repeated campaign of
> misrepresentation of facts, failure to verify facts damaging or tending
> to cause damage to the Plaintiffs business reputations before
> conveying the same to members of the public, implications of poor
> quality work, poor quality efficiency, poor business ethics and
> practices, and unreliability.

(FAC at 92).   The Plaintiffs assert that the Defendants relayed these statements "to both specific individuals … and to an identifiable class of persons, those who identify the Plaintiffs, respectively, as the choice of body shop to perform repairs."   (FAC at 92).

To prevail on a claim for tortious interference with business relations under Tennessee law, a plaintiff must demonstrate the following:

> (1) an existing business relationship with specific third parties or a
> prospective relationship with an identifiable class of third
> persons; (2) the defendant's knowledge of that relationship and not a
> mere awareness of the plaintiff's business dealings with others in
> general; (3) the defendant's intent to cause the breach or termination
> of the business relationship; (4) the defendant's improper motive or

improper means; and … (5) damages resulting from the tortious interference.

*Trau-Med of Am. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

Judge Smith concluded that the bulk of the tortious interference claim must be dismissed because, despite warnings from the Court, the Plaintiffs continue to plead in too vague a fashion, such as by "routinely alleg[ing] conduct committed by 'Defendants,' meaning all 31 insurance companies named in the case, against 'Plaintiffs,'" who are four auto body shops."   (Doc. 107 at 6). He also found that, with three exceptions,[1] the FAC did not include "averments of fact to supply the who, what, when, where, and how" of the tortious interference claim as needed to raise the Plaintiffs' right to relief above the speculative level.   *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).   In addition, he found that Count III was intended to incorporate every statement (and the two counts) set forth in the preceding 90 pages of the FAC, rendering it an impermissible shotgun pleading.   (Doc. 107 at 9).

In response to the determination that their pleading was too vague, the Plaintiffs argue that they are permitted to utilize group pleading, and that they are not required to identify specific insureds with whom the Defendants interfered because Tennessee law allows a claim where a defendant tortiously interferes with "an identifiable class of third persons," which the Plaintiffs have asserted in Count III.   Even if one accepts both of these arguments, however, the Plaintiffs still have not asserted a claim in Count III due to the absence of any of the information needed to render their allegations plausible.   Providing a laundry list of bad behaviors and alleging that all Defendants did all of those things to all of their insureds who wanted to patronize one of the Plaintiffs' shops is not enough, on its own, to assert a claim.   With the exception of the Individual Claims, the Plaintiffs provide almost nothing else.   While it is true, as the Plaintiffs argue, that they

---

[1] Those three exceptions (henceforth, the "Individual Claims") are discussed *infra*.

are not necessarily required to provide factual assertions setting forth "the who, what, when, where, and how" as to every transaction, they must provide *something* beyond conclusory allegations.   For the most part, the Plaintiffs have not done so, and the Court agrees with Judge Smith that the bulk of the claims asserted in Count III must be dismissed.

As noted above, Judge Smith identified three instances in the FAC – *i.e.*, the Individual Claims – where the Plaintiffs had stated a tortious interference claim.   Each involved allegations that a Defendant had successfully steered one of its insureds away from one of the Plaintiffs' shops to a competitor:

> 258.   In September, 2014, consumer K. Fayne notified Nationwide of the intention of taking the damaged vehicle to Plaintiff ICON Collision for repairs.   Per Fayne, the Nationwide customer service representative seemed "offended" by the choice of ICON. Nationwide repeatedly urged Fayne to take the vehicle to its DRP[2] shop, Collisionworx, first by the customer service call center representative then again by the adjuster, Brad Carter.   Fayne was told repeatedly Nationwide would only guarantee the work of Collisionworx, not ICON, that Nationwide could not "stand behind [ICON's] work."   Fayne interpreted this to mean ICON did not warrant its work and Nationwide's representations cast ICON in a bad light.
>
> 259.   Bowing to Nationwide's pressuring, Fayne took the vehicle to Collisionworx but the repairs were unsatisfactory.
>
> …
>
> 263.   B. Christensen took her vehicle to Plaintiff ICON for an estimate.    Upon being told the vehicle was taken to ICON, Defendant Liberty Mutual advised Christensen the vehicle had to be taken to its preferred shop, Joe Stewart's.   Liberty Mutual told Christensen it didn't know who ICON was and it would only guarantee the repair work if the vehicle was taken to Joe Stewart's. Christensen did not return to ICON but went to Joe Stewart's.
>
> …

---

[2] "DRP" stands for "Direct Repair Program," a type of preferred provider relationship between an insurer and a particular repair shop.

269.   In 2011, after B. Espinoza made a claim with State Farm and stated the vehicle would be repaired at Plaintiff AAA Collision, State Farm told Espinoza it was required the vehicle be taken to its DRP shop, ABRA, for repairs. As a result, Espinoza had the vehicle repaired by ABRA.

(Doc. 107 at 9-10).   As to the Fayne, Christensen, and Espinoza transactions, the only claim element at issue was the fourth one: the requirement that the interfering party have an improper motive or employ improper means.   *See Trau-Med*, 71 S.W.3d at 701 (listing elements of tortious interference claim).   Judge Smith found that the Plaintiffs had alleged in the FAC that no Defendant actually guarantees repairs regardless of which auto body shop does the work; as such, the statements by Nationwide and Liberty Mutual to the contrary were false.   (Doc. 107 at 10-11). Similarly, Judge Smith found that the Plaintiffs had alleged that insureds were not required to take their vehicles to a preferred shop, and therefore State Farm's statement to Espinoza about having to take the vehicle to ABRA was false.   These false statements, Judge Smith found, satisfied the requirement that plaintiffs allege that the interference had been accomplished by "improper means."

Respectfully, the Court disagrees.   The paragraphs from the FAC that Judge Smith cited as alleging that no insurer ever guarantees repairs read in pertinent part as follows:

284. Also reprehensible are the Defendants' assertions that Plaintiffs' work cannot be guaranteed but if the consumer goes to one of their network or preferred shops, the insurer will guarantee the work.

285. This is deeply misleading for three reasons. First, no insurance company and certainly none of the named Defendants performs any repair work. Therefore there is nothing for them to guarantee and asserting to Plaintiffs' customers and potential customers they will guarantee the work is both misleading and inaccurate. As phrased, Defendants' guarantee assertions reasonably lead consumers to believe the repairs are guaranteed by the insurer, which they are not.

286. A correct statement would be the Defendant insurers require network and preferred shops to guarantee their own work.

(FAC at 59) (emphasis added).   As the Court interprets the italicized text, the Plaintiffs are

asserting that no one can ever "guarantee" anything other than his or her own work.   This is

nonsensical.   While there are not many situations where someone would have an incentive to

guarantee the work of some third party, there is certainly nothing to stop anyone who wishes to do

so.

Regardless, the Plaintiffs allege that the Defendants require preferred shops (such as

Collisionworx and ICON) "to guarantee their own work."   (FAC at 59).   The difference between

Nationwide guaranteeing a repair and Nationwide forcing the repair shop to guarantee the repair is

insignificant.   It is certainly not enough to render the statements made to Fayne and Christensen

false.   As for Espinoza, Tennessee law allows an insurer to require that an insured take his or her

vehicle to a particular shop for repairs.[3]   As such, it was not improper for State Farm to require

Espinoza to take the vehicle to ABRA.

Judge Smith also found that the Plaintiffs had successfully alleged that the Defendants had

an improper motive in steering their insureds away from the Plaintiffs' shops:

> In addition to the false statements attributed to Nationwide, Liberty
> Mutual, and State Farm, Plaintiffs generally allege that Defendants
> would have paid the same amount for the repairs regardless of who
> performed them, so the only reasonable explanation for Defendants'
> actions was to punish Plaintiffs, damage them, and compel them to
> submit to Defendants' pricing practices. These averments allege an
> improper motive.

---

[3] Tennessee's Unfair Trade Practices and Unfair Claims Settlement Act (Tenn. Code Ann. §§ 56-8-101, *et. seq.*) identifies the following as an unfair claims practice:

> If the insurer owns a repairer or requires a repairer to be used, the
> insurer's failure to adopt and implement reasonable standards to
> assure that the repairs are performed in a workmanlike manner[.]

Tenn. Code Ann. § 56-8-105(14).   The necessary implication of this language is that insurers can legally require that their insureds patronize a preferred repair shop.

(Doc. 107 at 11) (internal citation omitted).   Again, however, the Court respectfully disagrees. The Plaintiffs have not alleged that these repair shops had raised their prices or attempted to do so. To the contrary, the Plaintiffs assert that the repairs would not have cost any more at their shops than at the Defendants' preferred shops.   As such, based on the allegations of the FAC, the Plaintiffs had already submitted to the Defendants' pricing practices, and the Defendants had no motive to punish them.

Thus, the Court concludes that, as to the three Individual Claims, The Plaintiffs have failed to assert that the Defendants utilized improper means or had an improper motive in steering their insureds away from the Plaintiffs' shops.   Beyond this, the Court agrees with Judge Smith's determination that the bulk of the allegations of Count III are too vague and conclusory to state a claim, and that Count III is an unacceptable shotgun pleading.   While the shotgun pleading issue could likely be cured in a subsequent pleading, the Court finds that the other problems could not. Accordingly, Count III will be dismissed with prejudice.

## IV.   Quantum Meruit

In Count IV of the FAC, the Plaintiffs attempt to assert a claim for quantum meruit.   In the words of the Tennessee Supreme Court, quantum meruit

> is an equitable substitute for a contract claim pursuant to which a
> party may recover the reasonable value of goods and services
> provided to another if the following circumstances are shown:
>
> 1. There is no existing, enforceable contract between the parties
> covering the same subject matter;
>
> 2. The party seeking recovery proves that it provided valuable goods
> or services;
>
> 3. The party to be charged received the goods or services;
>
> 4. The circumstances indicate that the parties to the transaction should
> have reasonably understood that the person providing the goods or
> services expected to be compensated; and

> 5. The circumstances demonstrate that it would be unjust for a party
> to retain the goods or services without payment.

*Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998) (citations omitted).

Judge Smith found that the Plaintiffs had failed to state a claim in Count IV because, based on the allegations of the FAC, they knew the price each Defendant was willing to pay before agreeing to perform any repairs, and therefore the Plaintiffs could not have had a reasonable expectation of compensation beyond that price.[4]   (Doc. 107 at 17).   In addition, Judge Smith found that the Plaintiffs had not alleged that they had conferred a benefit on the Defendants.     (Doc. 107 at 17-18).   And finally, Judge Smith found that the quantum meruit count was subject to dismissal because it was both a shotgun pleading, in that the claim apparently included every assertion and claim in the 93 pages that preceded it, and an impermissibly vague group pleading.

The Plaintiffs assert that the Defendants have been underpaying for years and argue that this "unilateral course of conduct" does not extinguish their claims.   Instead, they argue, it increases the amounts that they are entitled to recover.   (Doc. 108 at 25-26).   But this misses the point, which is that the Plaintiffs knew ahead of time – when they still had the opportunity to refuse to perform any repairs – the amounts the Defendants intended to pay.   The source of that knowledge is not relevant.   Because they knew the amount the Defendants intended to pay for a repair, the Plaintiffs could not do the work and then reasonably expect to be paid more.   The Plaintiffs have not shown that they have suffered an injustice here, such that the Defendants should be required to provide additional compensation.

The Plaintiffs' effort to rebut Judge Smith's determination regarding the conferring of a benefit also misses the mark.   The Plaintiffs first appear to argue that Judge Smith erred by

---

[4] As Judge Smith noted, the Plaintiffs do not assert that the Defendants have failed to pay the expected price.   (Doc. 107 at 16).   Instead, Plaintiffs assert that they "are entitled to full payment for work performed, not merely what Defendants choose to pay."   (Doc. 108 at 25).

requiring that they allege that they had provided a "benefit" to the Defendants, when the case law

does not use the term "benefit".   *See Swafford*, 967 S.W.2d at 324 (requiring party seeking recovery

to show it provided "valuable goods or services" rather than a "benefit").[5]   The Plaintiffs then cite

to Section 1 of the Restatement of Restitution, which makes provision of a benefit one of the

elements of a quantum meruit claim, and defines "benefit" to include satisfaction of the duty of

another.   The Plaintiffs then argue that the allegations of the FAC show that they provided such a

benefit:

> The Plaintiffs averred in the complaint the Defendants have a duty to
> make payment for the damage repairs [sic] to the vehicles of their
> insureds and claimants.   Plaintiffs' services directly benefit the
> Defendants through execution of the duties Defendants owe
> claimants and insureds, thereby satisfying at least two of the
> examples of benefit set forth in the Restatement.   As Defendants
> have an obligation to pay for repairs, that obligation cannot be
> satisfied in the absence of repairs and repairs cannot be made without
> a repairer.

(Doc. 108 at 33).   As should be obvious, making it possible for the Defendants to satisfy their own

duty to pay for repairs is a far cry from actually satisfying the Defendants' duty to pay for repairs.

Only the latter would constitute a "benefit".   The failure to show that the Plaintiffs have conferred a

benefit on the Defendants also requires dismissal.

Without belaboring the point, the Court also agrees with Judge Smith that Count IV

incorporates the preceding three counts and every assertion in the preceding 93 pages, making it an

impermissible shotgun pleading, and that the Plaintiffs use of group pleading renders the count

impermissibly vague.   While these latter two shortcomings could possibly be cured in a subsequent

---

[5] It is not clear whether the Plaintiffs actually wish to pursue this semantic argument regarding "benefits" as opposed to "goods or services."   In the event they do wish to pursue it, the Court notes that the Plaintiffs have not alleged that they provided goods or services to the Defendants, either.   (As set forth in the FAC, the goods and services were provided to the Defendants' insureds, rather than the Defendants.)

pleading, the Court sees no way for the Plaintiffs to remedy their inability to plead (1) that they had a reasonable expectation of payment beyond the amount they knew the Defendants intended to pay or (2) that they conferred a benefit (or "valuable goods and services") upon them.   Accordingly, Count IV will be dismissed with prejudice.

### IV.   Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Report and Recommendation is affirmed in part and rejected in part, as set forth above.   And it is further

**ORDERED** that the Plaintiffs' state law claims are **DISMISSED WITH PREJUDICE**. The Clerk is directed to enter judgment in favor of the Defendants and close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 20, 2016.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party